UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROSHUNDA ABNEY, an individual; ROSHUNDA ABNEY, as Personal Representative of the Estate of ANGEL DEWBERRY; and RAFFINEE DEWBERRY, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, a county hospital pursuant to NRS § 450, *et seq.*; VALLEY HOSPITAL MEDICAL CENTER, INC., a Nevada corporation; DOE Defendants Abney through X, inclusive; and ROE CORPORATIONS, A through Z inclusive,<br><br>    Defendants. | Case No.: 2:09-cv-02418-RLH-PAL<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#47;<br>Motion for Summary Judgment–#48) |

    Before the Court is Defendant University Medical Center of Southern Nevada's ("UMC") **Motion for Summary Judgment** (#47), filed July 12, 2010.  The Court has also considered Plaintiffs Roshunda Abney (as an individual and as a representative of Angel Dewberry ("Baby Angel")) and Raffinee Dewberry's Opposition (#12), filed August 5, 2010, and UMC's Reply (#21), filed August 23, 2010.  Furthermore, the Court has considered UMC's Supplement

1

(#72) to its reply and Defendant Valley Hospital Medical Center, Inc.'s ("Valley") Joinder (#22) thereto.

Also before the Court is Valley's **Motion for Summary Judgment** (#48), filed July 26, 2010. The Court has also considered Plaintiffs' Opposition (#51), filed August 19, 2010, and Valley's Reply (#53), filed September 7, 2010. Furthermore, the Court has considered UMC's joinder to Valley's motion and reply. (Dkt. #49, #54.)

## BACKGROUND

The Court directs the reader to its previous summary judgment order for a comprehensive recitation of the alleged facts. (Dkt. #30, Apr. 8, 2010.) In short, this dispute arises from Plaintiffs' claim that Defendants violated provisions of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd *et. seq*., when Abney prematurely gave birth to Baby Angel after waiting several hours for medical treatment in a hospital emergency room on November 30, 2009. Plaintiffs assert four EMTALA claims against UMC and Valley for their alleged "failure to screen and/or treat" Abney and Baby Angel. (Dkt. #14, Am. Compl.) Specifically, Plaintiffs allege that UMC and Valley's failure to provide Plaintiffs with an appropriate medical screening violated EMTALA's § 1395dd(a). (*Id.* ¶¶ 128, 156, 179, 199.) In addition, Abney and Dewberry allege claims of negligent infliction of emotional distress against UMC.

The Court quickly notes a procedural development in this case. Plaintiffs disclosed an expert witness, Dr. Frederick Gonzalez, on July 19, 2010—almost one month past the date set for expert disclosure, June 21. (Dkt. #39, Sched. Order.) UMC filed a motion to strike Dr. Gonzalez's report and preclude his testimony at trial because Plaintiffs failed to timely disclose him as an initial expert. (Dkt. #55, UMC's Mot.) Magistrate Judge Leen granted UMC's motion, but only to the extent that Plaintiffs are now precluded from calling Dr. Gonzalez for their case in chief. (Dkt. #67, Hr'g Mins., Oct. 12, 2010.)

///

Defendants UMC and Valley have now asked the Court for summary judgment on Plaintiffs' claims. For the reasons discussed below, the Court denies UMC and Valley's motions.

**DISCUSSION**

**I.   Summary Judgment Legal Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002).

**II.     The Emergency Medical Treatment and Active Labor Act**

Congress enacted EMTALA to ensure that individuals receive adequate emergency medical care regardless of their ability to pay. *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001) ("*Jackson II*"). Congress was concerned that "hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." *Eberhardt v. City of L.A.*, 62 F.3d 1253, 1255 (9th Cir. 1995). To address these concerns, "EMTALA requires hospitals to take certain steps whenever an individual requests emergency medical treatment." *Kilcup v. Adventist Health, Inc.*, 57 F. Supp. 2d 925, 929 (N.D. Cal. 1999). Thus, "EMTALA and state medical malpractice laws are not synonymous causes of action; they provide distinct remedies for distinct wrongs." *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1348 (N.D. Cal. 1997) ("*Jackson I*"), *aff'd on other grounds by Jackson II*, 246 F.3d 1248 (9th Cir. 2001).

Hospitals have two obligations under EMTALA, the second of which is not at issue in this case. First, if a person comes to the emergency department of a hospital that participates in the Medicare program seeking examination or treatment for a medical condition, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Claims alleging a violation of this appropriate medical screening requirement are commonly referred to as "disparate screening" claims. *See, e.g.*, *Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, 583 F. Supp. 2d 1179, 1184–85 (E.D. Cal. 2008). Second, and not at issue here, if the hospital's medical staff determines there is an emergency medical condition, then the hospital must "stabilize" the patient before transfer or discharge. § 1395dd(b).

EMTALA does not define the phrase "appropriate medical screening examination" set forth in § 1395dd(a) other than to state that its purpose is to identify an "emergency medical

///

condition." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 879 (4th Cir. 1992). However, the Ninth Circuit has established that:

> a screening is "appropriate" within the meaning of EMTALA if it: provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not "designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury."

*Baker v. Adventist Health, Inc.*, 260 F.3d 987, 995 (9th Cir. 2001) (quoting *Jackson II*, 246 F.3d at 1256). EMTALA does not require hospitals to provide patients presenting different symptoms with identical screenings. *Id*. Neither does EMTALA require hospitals to provide screenings that are beyond their capabilities. *Id.* Rather, the essence of the appropriate medical screening requirement is that "there be some screening procedure, and that it be administered even-handedly." *Hoffman v. Tonnemacher*, 425 F. Supp. 2d 1120, 1130 (E.D. Cal. 2006) (quoting *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1192 (1st Cir. 1995)). To satisfy the appropriate medical screening requirement, "the test is whether the challenged procedure was identical to that provided similarly situated patients as opposed to whether the procedure was adequate as judged by the medical profession." *Eberhardt*, 62 F.3d at 1258 (citing cases from the D.C., Fourth, and Sixth Circuits).

As a preliminary matter, the Court finds it necessary to clarify the parameters of Plaintiffs' EMTALA claims. Plaintiffs allege disparate screening claims against UMC and Valley for their "failure to screen and/or treat" Abney and Baby Angel in violation of § 1395dd(a). (Dkt. #14, Am. Compl. ¶¶ 128, 156, 179, 199.) Plaintiffs seem to imply an additional claim for deficient medical treatment by including the word "treat" in their allegations. However, Plaintiffs' various pleadings and motions have consistently argued that their "claims rise from a failure to screen" (Dkt. #6, Pls.' Mot. 3:26–4:4; *see also*, Dkt. #50, Pls.' Opp'n 3:14–17), not a failure to treat or stabilize. Nowhere in their amended complaint or pleadings do Plaintiffs allege a failure to treat or stabilize, a "stabilization claim" under § 1395dd(b). The Court therefore concludes that Plaintiffs' allegations are properly limited to disparate screening claims.

5

UMC and Valley advance several comparable theories on Plaintiffs' disparate screening claims. The Court will simultaneously address UMC and Valley's summary judgment motions to the extent they assert similar theories and separately address their unique arguments.

### A. Expert Medical Testimony

Defendants assert that NRS § 41A.100(1) requires a plaintiff who is claiming injuries or death from medical malpractice to provide "evidence consisting of expert medical testimony" to substantiate their claims. (Dkt. #47, UMC Mot. 10:11–13.)[1] Defendants then argue that Plaintiffs cannot provide the requisite expert medical testimony because Magistrate Judge Leen previous ruling dictates that Plaintiffs may not call their expert witness, Dr. Gonzalez, during their case in chief. Defendants conclude that Plaintiffs cannot show triable issues of fact on their disparate screening claims because Plaintiffs cannot meet the expert medical testimony requirement, and Defendants are therefore entitled to judgment as a matter of law.

Plaintiffs argue that they need not present expert medical testimony to succeed on their disparate screening claims. Plaintiffs maintain that summary judgment is inappropriate here because this case is not a medical malpractice case to which NRS § 41A.100 applies; therefore, they are not required to use expert medical testimony to substantiate their disparate screening claims. The Court agrees and directs Defendants to its previous ruling wherein the Court explained that disparate screening claims are not subject to a professional negligence or medical malpractice standard. (Dkt. #30, Order, at 11, Apr. 8, 2010.) Courts have repeatedly distinguished EMTALA and medical malpractice claims as distinct causes of action. The Court therefore declines to apply NRS § 41A.100 to Plaintiffs' disparate screening claims as Defendants suggest.

///

---

[1] UMC also asks the Court to follow an unpublished Ninth Circuit opinion, *Root v. Tempe St. Luke's Hosp.*, 2010 WL 737846 (9th Cir. Mar. 3, 2010), which upheld summary judgment against plaintiff's wrongful death claim under Arizona state law because plaintiff failed to provide expert testimony on whether defendants caused plaintiff's son's death. However, *Root* is inapplicable here because the claims in this case are disparate screening claims arising under EMTALA, not wrongful death claims arising under Arizona's statute.

AO 72
(Rev. 8/82)

**B.** **Personal Harm**

EMTALA states: "[a]ny individual who suffers *personal harm* as a direct result of a participating hospital's violation of [the appropriate medical screening requirement] may, in a civil action against the participating hospital, obtain those damages available for personal injury . . . ." § 1395dd(d)(2)(A) (emphasis added). Thus, to survive summary judgement, Plaintiffs must show they are individuals who suffered personal harm as a direct result of Defendants' conduct. Congress did not define "personal harm" in EMTALA, and the corresponding case law does little to define the term other than distinguishing purely economic injuries. *See, e.g.*, *Harrison v. Christus St. Patrick Hosp.*, 430 F. Supp. 2d 591, 596 (W.D. La. 2006) (patient failed to state valid EMTALA claim because being made to sign payment guarantee was not personal harm); *Kizzire v. Baptist Health Sys., Inc.*, 343 F. Supp. 2d 1074, 1084 (S.D. Ala. 2004) (plaintiffs failed to adequately plead EMTALA claim because their alleged economic injury was not personal harm). However, a plaintiff's alleged emotional harm, prolonged suffering, and delayed recovery can create genuine issues of material fact on the element of personal harm. *See, e.g.*, *Zeiler v. Elmore Cty. Health Care Auth.*, 56 F. Supp. 2d 1324, 1327 (M.D. Ala. 1999) (factual issues as to whether patient suffered personal harm precluded summary judgment; "because EMTALA contains no *de minimus* exception, this harm is enough to sustain an action under § 1395dd(d)(2)(A)").

Defendants argue that Plaintiffs cannot show they sustained any injuries as a result of their employees' conduct because there is no dispute as to Baby Angel's viability. In other words, Plaintiffs did not suffer personal harm because Defendants cannot incur liability under EMTALA for Baby Angel's inevitable death. However, Plaintiffs maintain that Abney suffered in significant pain during the several hours that Plaintiffs waited for medical treatment. Plaintiffs also claim that Abney's pain intensified during her wait. In fact, Abney said she felt as though she was in the worst pain of her life and felt that she was going to die. Defendants do not address these specific allegations or the possibility that Abney may have suffered any other personal harm in addition to Baby Angel's death.

AO 72
(Rev. 8/82)

1   The Court finds that Abney's description of prolonged suffering is consistent with
2   case law addressing EMTALA's personal harm requirement and could prompt a reasonable juror
3   to find that she and Baby Angel suffered such personal harm. The Court therefore concludes that
4   Abney's statements show triable issues of fact that preclude summary judgment.

5   **B.   Direct Result**

6   In addition to personal harm, a plaintiff must show that her injury was a "*direct
7   result* of a participating hospital's violation . . . ." § 1395dd(d)(2)(A) (emphasis added). Congress
8   chose not to define the phrase "direct result;" however, a plain reading of this language reveals an
9   intent for plaintiffs to demonstrate causation between an alleged personal harm and the hospital's
10  violation. *See Gross v. FBL Fin. Servs, Inc.*, 129 S. Ct. 2343, 2350 (2009) ("Statutory
11  construction must begin with the language employed by Congress and the assumption that the
12  ordinary meaning of that language accurately expresses the legislative purpose."); *BP America*
13  *Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are
14  generally interpreted in accordance with their ordinary meaning.").

15  In their motions, Defendants focus heavily on the causation element of Plaintiffs'
16  claims. Defendants present expert medical testimony to establish that Baby Angel's death was
17  caused by an untreatable infection of the placenta. Their experts opine that Baby Angel would not
18  have survived even if Abney had received immediate treatment when she arrived at UMC.
19  However, Plaintiffs need not show that Defendants' conduct caused Baby Angel's death to
20  succeed on their disparate screening claims. As the previous section sets forth, Plaintiffs
21  allegations of personal harm encompass more than Baby Angel's death. At the very least,
22  Plaintiffs argue that Abney experienced increased pain and suffering as a direct result of
23  Defendants' failure to follow their own screening procedures. Defendants' motions and replies do
24  not address causation in relation to any alleged harm other than Baby Angel's death. Thus, the
25  Court finds that Defendants have not met their initial burden to show that Plaintiffs lack sufficient
26  ///

evidence to carry their ultimate burden of persuasion at trial. Plaintiffs demonstrate triable issues of fact that their injuries were a direct result of Defendants' conduct.

### C. Disparate Screening

To recover on a disparate screening claim, a plaintiff must set forth evidence sufficient to support a finding that he "received a materially different screening than that provided to others in his condition." *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 84 (1st Cir. 2000). For disparate screening claims, "the issue is whether the procedures followed in the emergency room, even if they resulted in a misdiagnosis, were reasonably calculated to identify the patient's critical medical condition." *Hoffman*, 425 F. Supp. 2d at 1130 (quoting *Agosto*, 299 F.3d at 21).

#### i. UMC's Alleged Failure to Follow Established Policies

Refusing to screen or providing disparate screening violates EMTALA's § 1395dd(a), as opposed to negligence in the screening process or providing a faulty screening or making a misdiagnosis, which may impose liability in a medical malpractice action brought under state law. *Marshall v. E. Carroll Parish Hosp.*, 134 F.3d 319, 322–23 (5th Cir. 1998) (citing *Eberhardt*, 62 F.3d at 1258). Furthermore, "[e]vidence that a hospital did not follow its own screening procedures can support a finding of EMTALA liability for disparate treatment." *Baker*, 260 F.3d at 994 (quoting *Battle v. Mem. Hosp.*, 228 F.3d 544, 558 (5th Cir. 2000)).

UMC concludes that Plaintiffs have not presented sufficient evidence to show that they were treated differently than others; therefore, UMC is entitled to judgement as a matter of law. UMC relies on expert medical testimony to conclude that its employees performed an appropriate screening and triage. However, Plaintiffs contend that their medical records and other evidence show triable issues of fact concerning whether UMC employees followed established protocol. Plaintiffs point out that two government agencies which investigated this matter found that UMC did not provide an appropriate medical screening based on UMC's own policies and procedures. (Dkt. #50, Pls.' Opp'n Ex. D., Nev. Bureau of Health Care Quality and Compliance Report; Ex. E. Dept. of Health & Human Services Prelim. Determination Letter.) UMC argues

that Plaintiffs have no additional evidence now than they did when the Court denied Plaintiffs' motion for summary judgment, which sought to establish UMC's alleged EMTALA violation based on the same reports. (Dkt. #44, Order, June 30, 2010.) Although the conclusions of an administrative body are not dispositive in this case, they certainly negate UMC's assertion that it is entitled to judgment as a matter of law. The administrative bodies' conclusions create a factual dispute for a jury to decide.

To support its argument that UMC employees appropriately screened Abney and Baby Angel, UMC proffers Dr. John D. Dunn's expert medical testimony. Dr. Dunn opines that UMC performed an appropriate screening and triage, considering that UMC runs a very busy emergency department. (Dkt. #47, UMC Mot. Ex. B.) However, UMC's reliance on Dr. Dunn's report is misplaced because the report focuses on the sufficiency of Plaintiffs' screening rather than the alleged differences from other patients' screenings. Dr. Dunn bases his report on his review of Plaintiffs' medical records, Baby Angel's autopsy report, the Nevada Bureau of Health Care Quality and Compliance's report and findings, and Plaintiffs' complaint. But Dr. Dunn does not indicate that he reviewed UMC's established protocol or the medical records of other UMC patients to determine whether Plaintiffs received a materially different screening than that provided to others. Thus, his report does not settle factual questions or support judgment as a matter of law.

The Court finds that Plaintiffs have shown triable issues of fact precluding summary judgment on their disparate treatment claims against UMC. Accordingly, UMC is not entitled to judgment as a matter of law.

        **ii.**    **Valley's Alleged Failure to Follow Established Policies**

In its separate summary judgment motion, Valley argues that Plaintiffs cannot succeed on their disparate screening claims against Valley because Plaintiffs voluntarily abandoned their pursuit of medical care. Valley maintains that Plaintiffs' conduct—leaving the hospital of their own accord—amounts to either a waiver of any EMTALA claims or a failure to trigger EMTALA's appropriate medical screening requirement. Either way, Valley argues it is

AO 72
(Rev. 8/82)

entitled to judgment as a matter of law because Valley employees could not complete a screening within the few minutes Plaintiffs were in its emergency department or force Plaintiffs to stay and receive treatment.

Conversely, Plaintiffs argue that they have shown triable issues of fact because Valley employee's violated its own policies during the short amount of time in dispute. Valley's policy provides that a representative from the admitting department will "immediately notify the Triage Nurse of any individual presenting . . . for treatment." (Dkt. #51-1, Pls.' Opp'n Ex. C.) All patients are to be evaluated *prior* to being admitted; "[a]fter the physician has medically screened the patient and provided any emergency treatment necessary, the Emergency Department staff will inform the Admitting Department [representative] that it is okay to complete the registration process and obtain signatures." (*Id.*) According to the policy, "[o]nly the quick patient identification (QPI) process can be obtained if time permits." (*Id.*) The QPI identifies basic demographic information such as the patient's name, address, phone number, social security number, date of birth, and chief complaint. The policy also allows Valley's staff to obtain this information from a relative if the patient is taken directly back for treatment. (*Id.*) ("If the patient is unable to sign, a family member may sign.")

Plaintiffs argue that Valley violated its own policies by failing to notify the triage nurse that Abney was seeking emergency care and by refusing to give Abney any type of screening without her personally completing some type of admitting paperwork. Further, they claim a registration clerk questioned why they thought they would fare any better at Valley than they had at UMC. Plaintiffs chose to leave because they believed this comment indicated that Valley would not provide Abney with medical care. Plaintiffs argue that this inappropriate comment amounted to a constructive refusal to treat Abney, not a waiver or voluntary abandonment.

The Court finds that Plaintiffs have shown triable issues of fact because they present evidence suggesting that Valley employees may not have followed its own screening procedures, conduct which can support a disparate screening claim without regard to the short

11

1  amount of time Plaintiffs spent in Valley's emergency department.  *See Baker*, 260 F.3d at 995.

2  Accordingly, Valley is not entitled to judgment as a matter of law.

**III.     Abney and Dewberry's Negligent Infliction of Emotional Distress ("NIED") Claims**

UMC argues that it is entitled to summary judgment on Abney and Dewberry's NIED claims because Plaintiffs have failed to show a negligent act or emotional damages sufficient to carry their burden of persuasion at trial.  Nevada specifically recognizes a parent's right to recover on a NIED claim if the "*Dillon* factors" are met.[2]  *Greco v. United States*, 893 P.2d 345, 351 n.10 (Nev. 1995); *see also Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999).  Those factors are: (1) the proximity of the plaintiff to the scene of the injury; (2) whether the plaintiff actually observed the injury; and (3) the degree of relationship between the plaintiff and victim.  *Greco*, 893 P.2d at 351 n.10.  This test recognizes the traditional NIED tort for a bystander's emotional injury caused by witnessing physical injury to a third person caused by a defendant's negligence.  *Kennedy v. Carriage Cemetery Serv. Inc.*, 737 F. Supp. 2d 925, 934 (D. Nev. 2010).

To succeed on their NIED claim, Abney and Dewberry must show that they are Baby Angel's parents and they suffered emotional distress as a result of witnessing Baby Angel suffer physical injury caused by UMC's negligence.  There is no factual question that Abney and Dewberry are Baby Angel's parents and that they were present during Baby Angel's birth.  Abney and Dewberry allege that Baby Angel endured a traumatic emergency delivery wherein the baby presented breach, went into distress after taking a few spontaneous respirations, and was subsequently pronounced dead.  UMC does not contest these allegations.  Therefore, the Court need only examine whether Plaintiffs proffer evidence of a negligent act and emotional damages sufficient to carry their ultimate burden of persuasion at trial.

///

///

---

[2] The *Dillon* factors were originally set forth by the California Supreme Court in *Dillon v. Legg*, 441 P.2d 912 (Cal. 1968) (en banc).

12

### A. Negligence

Plaintiffs maintain that they have provided sufficient evidence of UMC's negligence because they have shown factual issues concerning UMC's alleged violation of EMTALA's medical screening requirement. In general, a statutory violation is negligence *per se* if "the injured party belongs to the class of persons whom the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent." *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev. 2004). As previously discussed, Congress enacted EMTALA for several reasons, including: (1) to ensure that patients who go to a hospital's emergency department seeking medical treatment will receive adequate care, *Jackson II*, 246 F.3d at 1254; (2) to ensure that hospitals followed an appropriate screening procedure, *Hoffman*, 425 F. Supp. 2d at 1130; and (3) to prevent hospitals from administering disparate screenings, *Romar*, 583 F. Supp. 2d at 1184–85. The Court finds that Plaintiffs belong to the class of persons whom EMTALA seeks to protect because the statute explicitly protects the "health of the individual (or with respect to a pregnant woman, the health of the woman or her unborn child)." § 1395dd(e)(2). Furthermore, disparate screening is a type of injury which EMTALA intends to prevent. Thus, Abney and Dewberry have shown triable issues of fact as to whether UMC's conduct was negligent *per se*.

### B. Emotional Damages

Where a plaintiffs' emotional distress damages "are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented." *Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000). To establish serious emotional distress, a plaintiff must demonstrate that the stress is so intense that no reasonable person could be expected to endure it—general physical or emotional discomfort is insufficient. *Watson v. Las Vegas Valley Water Dist.*, 378 F. Supp. 2d 1269, 1279 (D. Nev. 2005). Whether the evidence of emotional distress is sufficient to allow the claim to advance to a jury is a

///

question of law for the Court to answer. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

        To establish her serious emotional distress, Abney states that she has been extremely depressed since this event, has had trouble engaging in daily activities, cannot concentrate, and has been mentally overwhelmed. Dewberry claims that he has endured serious emotional distress in the form of nightmares, difficulty sleeping, and trouble concentrating. He also indicates that he was so distraught as a result of Baby Angel's emergency delivery that he attempted suicide. As the Nevada Supreme Court once noted, one argument against bystander recovery for NIED was the difficulty or impossibility of proving the alleged emotional injuries in fact resulted from seeing a loved one endure a physical injury. *State v. Eaton*, 710 P.2d 1370, 1376 n.8 (Nev. 1985). However, this is not a situation in which the Court or a juror needs to speculate as to whether this event would cause a person emotional distress. Dewberry and Abney's testimony concerning their degraded emotional state could support a reasonable jurors finding of emotional distress, assuming that UMC's conduct satisfies NIED's other elements. Although Plaintiffs will have to demonstrate the degree to which their emotional distress is attributable to Baby Angel's emergency delivery versus their grief following the loss of their child, such a question is properly decided by a jury. The Court therefore finds that Plaintiffs have shown sufficient evidence to defeat summary judgment on their NIED claims and denies UMC's motion.

## CONCLUSION

        Accordingly, and for good cause appearing,

        IT IS HEREBY ORDERED that University Medical Center's Motion for Summary Judgment (#47) and Valley Health System's Motion for Summary Judgment (#48) are DENIED.

        Dated: February 4, 2011

_____
ROGER L. HUNT
Chief United States District Judge